# Staunton.

## C. J. SKEEN ET AL V. CLINCHFIELD COAL CORPORATION.

### September 20, 1923.

1. DEEDS—*Reservations—Exceptions—Fee-Simple Remaining in Grantor and his Heirs—Case at Bar.*—In the instant case a deed reserved a lot of land from the tract described containing five acres, and the grantors convenanted that the grantees should have the exclusive right to purchase the said five acres at a certain price, and that if the grantor or his heirs or his assigns decided to sell the five acres and so notified the grantee, or his successors, the grantee, or his successors, should be bound to purchase the five acres at the price named.

   *Held:* That whether the clause dealing with the five acres be construed as constituting a reservation or an exception, in its strict technical sense, it was clear that the grantee did not acquire a fee-simple interest in the five acres, and that there remained in the grantor and his heirs an interest therein which the grantee must acquire, if at all, by purchase.

2. DEEDS—*Reservations—Rule Against Perpetuities—Case at Bar.*—In the instant case the grantors conveyed to the grantee a certain tract of land reserving five acres as a home. The contract contained a provision giving to the grantee a right to purchase, and binding it to purchase, this five acres whenever, but not until, the grantor or his heirs or assigns should desire to sell.

   *Held:* That this was an executory contract attempting to create an executory interest in the grantee, which might vest at any moment, and yet which might never vest, and that such a contract was within the inhibition of the rule against perpetuities.

3. PERPETUITIES—*Possibility that an Executory Interest will not take Effect Within the Period Limited—Rule Applies to Options.*—Any executory interest which, by possibility, may not take effect until after lives in being and twenty-one years and ten months is *ipso facto* and *ab initio* void. In other words, the executory interest is void for remoteness if, at its creation, there exists a *possibility* that it may not take effect during any fixed number of then existing lives, nor within twenty-one years and ten months after the expiration of such lives, even though it is highly probable, or indeed, almost certain, that

it will take effect within the time prescribed. This rule applies to options, and to an option to sell as well as an option to buy.

4. Options—*Option to Sell.*—There may be an option to sell as well as an option to buy.

5. Perpetuities—*Options.*—It has been repeatedly held that option contracts which do not necessarily expire within the period of limitation fixed by the rule against perpetuity are within the ban of that rule and cannot be enforced by either party.

6. Perpetuities—*Definition—General Rule.*—A perpetuity is a future limitation, whether executory or by way of remainder, and either of real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Bird & Lively* and *Finney & Wilson,* for the appellants.

*Burns & Kidd, Morison, Morison & Robertson,* and *W. H. Rouse,* for the appellee.

Kelly, P., delivered the opinion of the court.

On March 9, 1909, Aaron Laforce and Mahala Laforce, his wife, agreed in writing to sell and convey to the Meade Real Estate Company, at the price of $100.00 per acre, a tract of land estimated to contain 100 acres "except five acres which said first party reserves as a home to be laid off so as to include said first party's dwelling house, orchard and other buildings, making one complete block, and the said first party agrees to give said second party the exclusive right to purchase

said five acres at the price of three thousand dollars, and in the event said first party decides to sell the five acres, and notifies said second party or their assigns, then the said second party will be bound to take said five acres at the price of three thousand dollars, and in the event said first party desires to lease said five acres said first party will give said second party the exclusive right to lease same at a fair cash value, and said five acres to be used for farming and agricultural purposes, * * *."

The Clinchfield Corporation acquired the rights of the Meade Real Estate Company under the above recited agreement, and on July 7, 1910, Aaron Laforce and wife, parties of the first part, and C. J. Skeen and Mahala Skeen, his wife, parties of the second part, in consideration of $9,452.50, conveyed to that company, subject to certain reservations or exceptions, the above mentioned land. The entire tract, upon accurate survey, proved to contain 101.4 acres, and was so described in the deed. C. J. Skeen and Mahala, his wife, the latter being a sister of Aaron Laforce, united in the conveyance as grantors for the reason that Aaron Laforce had theretofore sold but had not conveyed to C. J. Skeen twenty-seven and forty-four hundredths acres of the land conveyed to the Clinchfield Coal Corporation.

The deed from Laforce and wife to the Coal Corporation contained the following provisions and stipulations which have given rise to this litigation, to-wit:

"The said Aaron Laforce reserves from this conveyance the following described lot or parcel of land out of the above described tract of land, as a home, to-wit: (here follows description), containing five (5) acres.

"And the said parties of the first part, for themselves and their heirs and assigns hereby covenant and agree that the party of the third part, its successors and assigns, shall have the exclusive right to purchase the said

five acres so reserved as above, at the price of three thousand dollars ($3,000.00), and if the said Aaron Laforce, his heirs and assigns, decides to sell the said five acres of land and so notify the Clinchfield Coal Corporation, or its successors or assigns, then the said Clinchfield Coal Corporation, or its successors and assigns, shall be bound to purchase the said five acres of land at the price of three thousand dollars ($3,000.00), and the said Aaron Laforce, and his heirs and assigns, shall be bound to convey the same by good deed with covenants of special warranty of title, and if the said Aaron Laforce, his heirs or assigns, desires to lease the said five acres of land, then they covenant and agree that the Clinchfield Coal Corporation, its successors or assigns, shall have the exclusive right to become the lessee at a fair cash rental, and the said five acres is to be used for farming or agricultural purposes."

Aaron Laforce and his wife lived on the five acre tract until their death, and he died intestate and without issue. He had eleven brothers and sisters, some of whom survived him and others of whom had previously died leaving children who survived him and who took *per stirpes* the shares which would have fallen to their deceased parents, so that there were eleven full shares of the land to be divided among his heirs. One of these shares passed by descent to Mahala Skeen, and she has also acquired one-eleventh from her brother, Elijah Laforce, and five-eighths of another share.

The Clinchfield Coal Corporation at the time of the institution of this suit had acquired by purchase from other heirs of Aaron Laforce between seven and eight elevenths of the outstanding interests in the five acre tract in question.

This suit was brought by the Clinchfield Coal Corporation against C. J. and Mahala Skeen. The com-

plainant in its bill asserts that the clause as to the five acres was not an exception but merely a reservation as a home for Laforce and his heirs; that the complainant had the exclusive right to buy all of the outstanding interests which were for sale, and was in turn bound to buy the same whenever the owners desired to make the sale, at the price provided for in the deed; that C. J. Skeen and wife, as grantors in the deed, knew of such right and obligation on the part of the Coal Corporation; and that the said Skeen and wife "now hold said interests in trust for this complainant and a court of equity will compel them to convey said interests thus acquired to this complainant, Clinchfield Coal Corporation."

The prayer of the bill was that complainant be allowed to pay Skeen and wife, or into court for them, "the proper sum for said interests at the price of $3,000.00 for the whole, and that they be required to convey to complainant all of the interest they have in any manner acquired, except by inheritance, in said parcel." The court entered a decree granting the relief prayed for, and from that decree this appeal was allowed.

On behalf of the appellants it is claimed, first, that the clause affecting the five acres must be construed as an exception and not as a reservation; second, that the right purported to be given by the deed to the appellee to acquire the same at the price of $3,000.00 constitutes an unlawful restraint on alienation and is therefore void; and, third, that such purported right is unlawful and void because it violates the rule against perpetuity.

[1] 1. Taking these propositions up in their order, it is not necessary in our view of the case to decide whether the clause in the deed dealing with the five acres is to be construed as constituting a "reservation" or an "exception," in the strict technical sense of those terms.

It is clear that the grantee did not acquire the fee simple interest in the five acres, and that there remained in the grantor and his heirs an interest therein which the grantee must acquire, if at all, by purchase. That this is true appears unmistakably from the provision that the grantee is to buy, "if the said Aaron Laforce, his heirs and assigns, decides to sell the said five acres of land;" and the appellee recognizes this conclusion in the following paragraph in its bill:

"By reference to said deed it will further appear that another one of the limitations upon this reservation by said Aaron Laforce of the five-acre parcel *for a home* was a covenant by him and for his heirs that whenever he or they should decide to sell their interest in said parcel the Clinchfield Coal Corporation, your complainant here, should have the exclusive right to acquire from them said parcel by paying an additional sum of three thousand dollars ($3,000.00) and they would be bound to convey or release by proper deed to your complainant this said parcel."

2. Was the right purported to be given the grantor to purchase the five acres at $3,000.00 illegal and void as an undue restraint on alienation? We deem it unnecessary to discuss this question, because the case may be more properly disposed of under the aspect next below considered.

[2] 3. Did the provision in question violate the rule against perpetuities? We think it did. It was a contract giving to the grantee a right to purchase and binding it to purchase the five acres whenever (but not until) the grantor or his heirs or assigns should desire to sell. In other words, we have here an executory contract attempting to create an executory interest in the grantee which might vest at any moment and yet which might never vest. Such contracts are universally held

to be within the inhibition of the rule against perpetuities.

[3-5] In Graves' Notes on Real Property, section 215, it is said: "Any executory interest which, by possibility, may not take effect until after lives in being and twenty-one years and ten months is *ipso facto* and *ab initio* void. In other words, the executory interest is void for remoteness if, at its creation, there exists a *possibility* that it may not take effect during any fixed number of now existing lives, nor within twenty-one years and ten months after the expiration of such lives, even though it is highly probable, or indeed, almost certain, that it will take effect within the time prescribed."

This rule applies to options. It is true that the option here is not an option to buy but an option to sell. The grantee is not only given the exclusive right to buy, but he is bound to buy whenever the grantor or his assigns indicate a desire to sell. There may be an option to sell as well as an option to buy. 39 Cyc. 1233. The grantee's contract depends upon the option to sell, and that option might never have been exercised. It has been repeatedly held that option contracts which do not necessarily expire within the period of limitation fixed by the rule against perpetuity are within the ban of that rule and cannot be enforced by either party. In *Starcher Bros.* v. *Duty,* 61 W. Va. 373, 56 S. E. 524, 9 L. R. A. (N. S.) 913, 123 Am. St. Rep. 990, the gist of opinion, as stated in the syllabus, is as follows:

[6] "A perpetuity is a future limitation, whether executory or by way of remainder, and either of real or personal property, which is not to vest until after the expiration of, or will not necessarily vest within, the period fixed and prescribed by law for the creation of future interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation. * *. *

"A contract which gives the right to purchase land within a specified time, and also contains an agreement that it may be extended yearly on the payment of a sum designated and that its terms and stipulations shall extend and apply to the heirs, assigns, executors and administrators of the parties, attempts to create an interest which is within the rule against perpetuities, and is therefore void.

"A contract which attempts to create an interest forbidden by the rule against perpetuities does not become enforcible upon one of the contracting parties accepting a payment thereunder according to its provisions, nor can he be estopped from urging that it is void."

In *Woodall v. Bruen*, 76 W. Va. 193, 85 S. E. 170, the second syllabus, which is fully supported by the opinion of the court, is as follows:

"An option for the purchase of land at such time in the future or within ninety-nine years from its date, as the optioner may elect, partakes of the nature of an executory limitation, vesting no immediate interest in the land, and constitutes an unreasonable restraint upon alienation thereof even though such option is in form a reservation of right to the grantor in a deed by which the land is conveyed."

It is to be observed that while the quotation here given from the syllabus in the *Woodall Case* speaks of a restraint upon alienation, the opinion of the court says that the decision is really based upon the rule against perpetuity. These two rules are so similar in their underlying reason as that they necessarily often shade into each other.

In 21 R. C. L. p. 303, section 28, it is said: "Options given to purchase real estate are regarded as having the effect of creating future interests depending on the contingency of the exercise of the option. Hence if there is

a possibility that the option may not be exercised within the limits of the time allowed by the rule against perpetuities, the option will fall under the ban of this rule. Such is· the case where no time is fixed within which the option must be accepted."

The most extensive and satisfactory discussion which we have found upon the rule against perpetuities as applied to option contracts, is contained in the case of *Barton* v. *Thaw*, 246 Pa. St. 348, 92 Atl. 312, Ann. Cas. 1916D, 570. In that case the option purported to confer upon the grantee in a deed for coal under a certain tract of land the right to purchase the land in fee simple in case the grantors, or their heirs or assigns, "should at any future time whatsoever desire" to make such sale. The judge of the court of common pleas held that the option was void, and filed with the record an elaborate and learned opinion containing a discussion of the whole subject, both upon reason and authority. The Supreme Court of Pennsylvania adopted and approved that opinion in the following language:

"The learned court below has given such convincing reasons for the conclusions upon which the decree in the present case was ·based that we can add nothing of value to the discussion of the legal principles involved. The covenant in question was declared to be void because in violation of the rule against perpetuities. We quite agree with the learned court below that it would be difficult to conceive any ·case which could be deemed more violative of the rule and a greater hindrance to alienation than the one at bar. The case turns very largely upon the character of the interest in the surface which the optionees took under the covenant. If it was a present, fixed and vested interest in the land the rule against perpetuities would have no application. But is a mere option to purchase land, unlimited as to

time and indefinite in duration, which may be exercised in ten years, or in a hundred years, or in a thousand years, or which may never be exercised at all, depending upon the wish or pleasure of the optionee, a present vested interest? To ask this question would seem to answer it. In no proper legal sense can a mere privilege of exercising a future right to purchase be deemed a present vested interest in land. The optionees may never exercise their option, and failing to do so, they would never acquire a vested interest in the land. While the precise question has not been raised or decided in Pennsylvania, other jurisdictions have considered and decided it adversely to the contention of appellants here. The underlying principles which control in cases of this character were very fully discussed in *London, etc., R. Co.* v. *Gomm*, 20 Ch. D. (Eng.) 562; *Winsor* v. *Mills*, 157 Mass. 362, 32 N. E. 352; *Starcher* v. *Duty*, 61 W. Va. 373, 56 S. E. 524, 123 Am. St. Rep. 990, 9 L. R. A. (N. S.) 913. We think the reasoning of these cases is unanswerable and they are cited with approval by this court."

In a note to this case of *Barton* v. *Thaw*, Ann. Cas. 1916D, p. 577, there is a further citation of the authorities to support the general rule that "an option to purchase land which may be exercised beyond the period prescribed by the rule against perpetuities is void as violative of that rule." This note cites only one case which is out of line with the decisions in *Barton* v. *Thaw*, and that is the case of *Hollander* v. *Central Metal & Supply Co.*, 109 Md. 131, 71 Atl. 442, 23 L. R. A. (N. S.) 1135, in which the Maryland court refused to follow the general rule and sustained the option because it was contained in a lease like many others then in force and always theretofore considered legal in that State, and the court thought it essential to sustain the

option and thus avoid disturbance of land title in that jurisdiction.

No such reason as that which influenced the Maryland court exists in this State, and the general rule must be applied. As already observed, the appellee is not relying upon an option to purchase, but an exclusive right to purchase coupled with an obligation on its part to make the purchase whenever the vendor, or his heirs or assigns, shall decide to sell. But it is manifest that the same rule must apply as if the appellee had a mere option to purchase. Its contract creates an executory interest which could never vest until the vendor or *his heirs or assigns* exercised the option to sell. The interest of the appellee might vest at any time, but it might never vest, and the contract is therefore clearly within the rule against perpetuities.

It follows that the decree complained of must be reversed and a final decree entered here dismissing the bill.

*Reversed.*