347 So.2d 1313 (1977)
Doris Elizabeth PACE and James C. Walker
v.
James Lamar CULPEPPER and wife, Louise Shirley Culpepper.
No. 49403.
Supreme Court of Mississippi.
July 6, 1977.
*1314 Warner, Ray & Cobb, Harvey B. Ray, Meridian, for appellant.
Witherspoon, Compton & Mason, William B. Compton, Meridian, for appellees.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
The appeal and cross appeal in this case are from a decree of the Chancery Court of Lauderdale County. The primary question is whether the rule against perpetuities applies to an option to purchase land.
On March 28, 1970 Mr. and Mrs. C.B. Walker conveyed by warranty deed 2.54 acres to James L. and Louise S. Culpepper for the consideration of $1,000 per acre. On the same date the Walkers and Culpeppers *1315 signed an option[1] giving the Culpeppers the first option to purchase an additional .6 of an acre owned by the Walkers at $1,000 per acre.
On March 28, 1973, following the death of his wife, C.B. Walker conveyed by quit-claim deed the .6 of an acre covered by the option to his daughter, Doris Elizabeth Pace, who then conveyed an undivided one-half interest to her brother, James C. Walker on June 21, 1973. C.B. Walker died on June 30, 1973.
Doris Elizabeth Pace and James C. Walker filed suit in the Chancery Court against James Lamar Culpepper and wife, Louise Shirley Culpepper, seeking to set aside the option and warranty deed on the grounds that (1) the consideration was so inadequate as to shock the conscience, (2) the option was void because it violated the rule against perpetuities; (3) the option is void as a restraint upon the alienation of property, and (4) the option and the deed together form a single integral transaction and if the option is void and set aside the deed must also be set aside. The Culpeppers answered and denied the essential allegations of appellants' lawsuit and the matter was submitted to the chancery court without testimony based upon the pleadings and documents involved.
No proof was offered on the question of inadequacy of consideration so this question was not before the trial court and is not before this Court on appeal.
The chancery court held that the deed was valid but the option was void and should be cancelled. Complainants appealed from the holding that the warranty deed was valid and defendants cross appealed from the holding that the option was void.
At the outset the difference between an ordinary option and a pre-emptive *1316 right should be noted. In a typical option the optionee has the absolute right to purchase for a definite consideration. A pre-emptive right involves the creation of the privilege to purchase only on the formulation of a desire on the part of the owner to sell.
In considering whether the option violated the rule against perpetuities two questions are presented: (1) was the pre-emptive right granted the Culpeppers personal; namely, would it die with them and therefore not violate the rule against perpetuities; and (2) even if the pre-emptive right was not personal, did it violate the rule against perpetuities?
In considering the first question, we do not experience difficulty in concluding that the right was not personal because the option grants to the Culpeppers and "their heirs, executors, administrators and/or assigns the first option to purchase said.6 of an acre at the rate of $1,000 per acre." By the express terms of the option, the pre-emptive right to purchase extends not only to the Culpeppers but to their heirs, executors, administrators or assigns without limit as to time.
We have never decided whether the rule against perpetuities applies to options to purchase real estate; however, the Court has been confronted with the rule in other contexts. In Magee v. Magee's Estate, 236 Miss. 572, 111 So.2d 394 (1959), we held that a testamentary trust was not in violation of the rule against perpetuities and in so holding the following definition of the rule was given:
`The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested within a life or lives in being at the time of the testator's death or the effective date of the instrument creating the future interest, and twenty-one years thereafter, . ..' (236 Miss. at 591, 111 So.2d at 402).
In Carter v. Berry, 243 Miss. 321, 136 So.2d 871, Sugg. of Error, 140 So.2d 843 (1962), this Court stated:
The rule against perpetuities is the law limiting the time within which future interests can be created. Gray, The Rule Against Perpetuities, Fourth Edition, Sec. 4, p. 4. It is stated as follows: `No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest.' And also: `No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' Sec. 201, p. 191, ibid. But, a true vested interest is never obnoxious to that Rule, while a contingent interest not only may be, but often is, violative of the Rule. Sec. 99, p. 88, ibid. And again, `A vested interest is not subject to the Rule against Perpetuities.' Sec. 205, p. 194, ibid. See also 70 C.J.S. Perpetuities § 10, p. 585. (243 Miss. at 343, 136 So.2d at 875-876).
.....
The rule against perpetuities is a rule invalidating interests which vest too remotely. It is not a rule against suspension of the power of alienation of property through the creation of interests in unborn or unascertained persons. It is not satisfied by the fact that there are persons in being who can together give a complete title to a purchaser. However, both principles stem from the general policy against withdrawal of property from commerce. Leach and Tudor, The Rule Against Perpetuities (1957), Sec. 24.3. In other words, an interest violating the rule against perpetuities fails because it vests too remotely; it may be, and usually is, freely alienable at all times. We are not concerned here with the `succession of donees' statute. Miss.Code 1942, Rec., Sec. 838; see Custy and Brand, Future Interests  The Mississippi Two Donee Statute and the Common Law Rule Against Perpetuities, 30 Miss. L.J. 221 (1959). (243 Miss. at 357-358, 140 So.2d at 846).
Applying our decisions to this case, it is readily apparent that the option violates *1317 the rule. At the time of its inception the option vested no immediate interest in the Culpeppers. To the contrary there was a mere possibility that the Culpeppers would ever acquire an interest to the .6 of an acre. This possibility depended on whether the Walkers, or their heirs, ever decided to sell the property. Magee and Carter are but two of our many cases holding that the rule does not apply to vested interests but does apply to future interests or estates which by possibility may not become vested within the time required.
It is not necessary for us to rely solely on the general rules announced by this Court to determine whether the option is void because there is an abundance of authority in other jurisdictions supporting the view that the rule against perpetuities is applicable to options to purchase real estate. Skeen v. Clinchfield Coal Corp., 137 Va. 397, 119 S.E. 89 (1923); Turner v. Peacock et al., 153 Ga. 870, 113 S.E. 585 (1922); Barton v. Thaw, 246 Pa. 348, 92 A. 312 (1914).
In 61 Am.Jur.2d, Perpetuities § 50 at 51 (1972), the rule is stated as follows:
Options given to purchase real estate are regarded as having the effect of creating future interests depending on the contingency of the exercise of the option. Hence if there is a possibility that the option may not be exercised within the limits of time allowed by the rule against perpetuities, the option is void as a violation of this rule. Such is held to be the case where no time is fixed within which the option must be accepted. So, according to the generally prevailing view, an option to purchase real property, unlimited as to the time for its exercise, or extending beyond the period limited by the rule against perpetuities, violates such rule and is invalid.
The rationale behind this rule is explained in Morris and Leach, The Rule Against Perpetuities, Ch. 8, at 213 (1956):
But it has been held both in England and the United States that an option to purchase land is too remote if it can be exercised beyond the perpetuity period. The reasoning by which this result was reached was as follows. An option to purchase land is specifically enforceable. This gives the option-holder an equitable interest in the land; this interest is contingent upon his election to exercise the option. Contingent interests in land are void unless they must vest (if at all) within the perpetuity period. Therefore an option to purchase which may be exercised beyond the perpetuity period is void to the extent that it creates an interest in land.
Accord, Gray, The Rule Against Perpetuities, 4th Ed. § 330, at 362 (1942); and Leach, Perpetuities in Perspective, 65 Harv.L.R. 721, 737 (1952), 162 A.L.R. 581 (1946).
Pre-emptive rights to purchase real estate are subject to the rule against perpetuities. 61 Am.Jur.2d Perpetuities § 54 at 55 (1972), states the rule as follows:
A pre-emptive right to purchase real estate, which right involves the creation of a privilege to buy only on the formulation of a desire by the owner to sell, as distinguished from an ordinary option giving the optionee the absolute right to buy for a definite consideration, is held to be subject to the rule against perpetuities. Thus it has been ruled that a contractual right, granted to A and his heirs and assigns, unlimited as to time, to purchase real estate upon the same terms as the owner could and would sell to a third person, is void. However, where a pre-emptive right option is personal to the parties and is not binding upon their heirs or assigns, it has been held not to violate the rule against perpetuities.
It has been said that, "A pre-emption of unlimited duration, requiring offer to the pre-emptioner for a specified sum of money, is the most objectionable type of pre-emption, and is void by the weight of authority." American Law of Property, Vol. VI, § 26.67, p. 510.
The option in the case before us created in the Culpeppers, the optionees, a pre-emptive right to purchase unlimited as to time and indefinite in duration. The option was not personal to the optionees, but created a future equitable interest in the .6 of an acre *1318 which was susceptible of inheritance. It violated the rule against perpetuities because there is a possibility that it may not become vested within the time required by the rule.
Option contracts such as the one involved in this case cannot be upheld because such contracts take property out of commerce and prevent land from answering to the needs of growing communities. No improvements can be made on land so encumbered because the land always remains subject to being taken under the option. It is not a matter which affects the rights of individuals only, but the welfare of the public is at stake. It was for the express purpose of destroying such hinderances to progress that the rule against perpetuities was brought forth.
The Culpeppers argue that we should apply the doctrine of equitable approximation and hold invalid that portion of the option which could extend beyond the lives of the Walkers. The rule of equitable approximation was defined by this Court in National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933) as follows:
"`At this point it should be observed that the cy pres practice is not to be confused with the equitable doctrine of approximation which has grown up in the judicial administration (as distinguished from judicial creation) of charitable trusts. The ecclesiastical rule of cy pres is one thing, and the equitable rule of approximation is distinctly another. Their purpose, and their application are entirely different. As said by the Alabama court (Lovelace v. Marion Institute et al., 215 Ala. 271, 110 So. 381), `The appeal in this case is not to any cy pres power of the court, but to the equitable doctrine of approximation, in virtue of which the court of chancery exercises jurisdiction merely to vary the details of administration, in order to preserve the trust, and carry out the general purpose of the donor.'" (167 Miss. at 593, 148 So. at 654).
The equitable rule of approximation was applied in Carter v. Berry, supra, and In Re Estate of Kelly, 193 So.2d 575 (Miss. 1967). In its final analysis the equitable rule of approximation is a rule of judicial construction, designed to aid the Court to ascertain and carry out, as nearly as may be, the intent of a donor or testator. It has been applied in this state to trusts and wills but has never been applied to options. In trusts and wills there is a vesting of property and the rule is applied to vary the details of administration to preserve the trust and to carry out the intention of the donor or testator, whereas in an option there is no vesting of property.
The complainants in their direct appeal argue that the deed executed by the Walkers to the Culpeppers, together with the option, constituted a single transaction and if the option fails the deed must also fail. They urge, under the holding of Carter v. Berry, supra, that the total plan of the parties to the deed and to the option is a part of a single transaction with each instrument inextricably tied to the other.
We reject this contention because the deed is valid and complete on its face. Full consideration was paid for the 2.54 acres conveyed by the deed. The deed does not contain any restriction or limitation. It was not dependent upon the validity of the option and the Culpeppers by the option did not bind themselves to purchase the additional .6 of an acre. Cancellation of the option does not affect the validity of the deed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] AGREEMENT is made and entered into between C.V. WALKER and wife, MRS. BERTHA JOHNS WALKER, Parties of the First Part, and JAMES LAMAR CULPEPPER and wife, LOUISE SHIRLEY CULPEPPER, Parties of the Second Part, as follows, to-wit:
In consideration of the fact that the Parties of the Second Part are today purchasing from the Parties of the First Part 2.54 acres of land at the rate of $1,000.00 per acre; that the Parties of the Second Part desire to purchase all the property of the Parties of the First Part that lies between U.S. Highway No. 45 and the Springhill Public Road in Lauderdale County, Mississippi; that the Parties of the First Part desire to retain approximately six-tenths (6/10) of an acre; however, both Parties of the First Part and Parties of the Second Part are agreeable to going ahead with the sale and purchase of the 2.54 acres, exclusive of the 6/10 of an acre being retained, provided the Parties of the First Part will give the Parties of the Second Part an option to purchase said 6/10 of an acre.
NOW THEREFORE, in consideration of the premises and the agreement of the Parties of the Second Part to proceed with the purchase of the 2.54 acres of land at the rate of $1,000.00 per acre, the Parties of the First Part do hereby contract and agree with the Parties of the Second Part as follows:
1. That if and when the approximately 6/10 of an acre of land being retained by the Parties of the First Part in the triangle formed by the intersection of U.S. Highway No. 45 and the Springhill Public Road (being all the land that Parties of the First Part will have left lying between U.S. Highway No. 45 and the Springhill Public Road) is desired to be sold the Parties of the First Part and their heirs, executors, administrators and/or assigns will give the Parties of the Second Part and their heirs, executors, administrators and/or assigns the first option to purchase said 6/10 of an acre at the rate of $1,000.00 per acre.
2. The Parties of the First Part will give Parties of the Second Part at least thirty (30) days within which to complete the exercise of this option after Parties of the First Part, their heirs, executors, administrators and/or assigns have notified the Parties of the Second Part, their heirs, executors, administrators and/or assigns of their intent to sell said 6/10 of an acre.
3. Upon tender of the purchase price at the rate of $1,000.00 per acre the Parties of the First Part, their heirs, executors, administrators and/or assigns contract and obligate themselves to sell, convey and warrant generally unto the Parties of the Second Part, their heirs, executors, administrators and/or assigns the approximately 6/10 of an acre free and clear of all liens; and, to make and deliver a good and sufficient deed of conveyance unto said Parties of the Second Part, etc.
4. This option is intended to be a continuing, lasting and binding option upon the Parties of the First Part, their heirs, executors, administrators and/or assigns because the Parties of the Second Part do not desire to purchase the other 2.54 acres unless they have the first option to purchase the approximately 6/10 of an acre being retained by the Parties of the First Part.